**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2602-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GREGORY A. JEAN-BAPTISTE, a/k/a
GREGORY JEAN BAPTIST, GU JEAN,
GREGORY BAPTITE, GREGORY
BAPISTE, GREGORY JEAN,
GREGORY JEAN-BAPISTE,
GREGORY A. BAPTISTE, GREGORY J.
BAPTISTE, GREGORY A. JEAN,
GREGORY JEANBAPTISTE,
GREGORY JEAN BAPTIST, and
GREGORY A. JEANBAPTISTE,

    Defendant-Appellant.

_____

Submitted September 25, 2019 – Decided August 14, 2020

Before Judges Fuentes, Haas, and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment Nos.14-03-0457 and 15-01-0135.

Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Ian David Brater, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On June 29, 2013, City of Asbury Park Police Detectives arrested defendant Gregory A. Jean-Baptiste[1] and charged him with possession of heroin with intent to distribute. On March 12, 2014, a Monmouth County Grand Jury returned Indictment No. 14-03-0457 charging defendant with third degree possession of heroin, N.J.S.A. 2C:35-10(a)(1) (Count One); third degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(b)(3) (Count Two); third degree possession of heroin with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7 (Count Three); and second degree possession of heroin with intent to distribute within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1 (Count Four).

---

[1] Asbury Park detectives also arrested Spagnoli Etienne, and he was indicted as a codefendant on these same charges. Along with defendant, Etienne challenged the constitutionality of the search before the trial court. However, he is not part of this appeal.

On January 26, 2015, a Monmouth County Grand Jury returned Indictment No. 15-01-0135 charging defendant with third degree possession of heroin, N.J.S.A. 2C:35-10(a)(1) (Count Five); second degree possession of heroin, in a quantity of one half ounce or more, with intent to distribute, N.J.S.A. 2C:35-5(b)(2) (Count Six); third degree possession of heroin with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7 (Count Seven); and second degree possession of heroin with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (Count Eight).

Defendant filed two separate motions to suppress the evidence seized by the police officers who conducted the warrantless searches of the two motor vehicles. The judge assigned to adjudicate the motion to suppress the charges in Indictment No. 14-03-0457 conducted an evidentiary hearing over two nonsequential days in June and August 2016. The State presented the testimony of Asbury Park Detective Joseph Spallina and moved into evidence nine documentary exhibits. Defendant did not call any witnesses.

At the conclusion of the evidentiary hearing, the motion judge found the police officers arrested defendant at the scene after discovering two outstanding warrants for failure to pay child support. While in the process of handcuffing defendant, Detective Spallina testified he saw "paper folds stamped in red and

blue ink" through the bottom of a Huggies® box located inside the motor vehicle. Spallina described this part of the Huggies® box as "more or less translucent." Based on his training and experience, Spallina recognized these paper folds as packaging used for the distribution of heroin. The judge found defendant knowingly and willingly acknowledged possession of the heroin. Codefendant Etienne, who was seated in the driver-seat of the car, knowingly and willingly signed a consent form authorizing the police officers to search the vehicle. The motion judge noted that his findings were based, in large part, on the credibility of Detective Spallina's testimony.

Conversely, the judge assigned to adjudicate defendant's motion to suppress the evidence related to Indictment No. 14-03-0457 denied the motion without conducting an evidentiary hearing. Defendant disputed the veracity of Darius Anderson, the State's informant who provided the "tip" which led the police to pull behind a lawfully parked car, activate their emergency lights, order defendant and his sister, Nathalie Jean-Baptiste, to step out of the car, and frisk them. Defendant argues he was denied the right to challenge the underlying factual account provided by Darius Anderson that led the police officers to this presumptively unconstitutional encounter.

4

Relying only on information provided by Anderson, the police officers at the scene obtained Nathalie's[2] consent to search the vehicle. Inside the car's glove compartment, the officers found a large clear plastic bag with "numerous glassine baggies containing a brownish powdery substance," which the officers recognized as heroin. These "baggies" were banded together in packages of ten. Defendant challenged the validity of his sister's consent because she was not the owner of the car. He also wanted to question Anderson at an evidentiary hearing to determine whether the information he provided was sufficiently reliable to justify his warrantless detention by the police.

The judge denied defendant's request for an evidentiary hearing. He gave the following explanation in support of this decision:

> In this [c]ourt's view, the defendant's counterstatement of fact does not establish a dispute of material fact. The statement about the informant or Darius Anderson being unreliable, without further illustration as to why the information provided in this dispute is unreliable, does not create a dispute that meets the standard of materiality. Merely stating that the informant is unreliable, does not create a factual dispute with regard to the information provided by the informant. Moreover, because reliability is a conclusion drawn from the body of facts, rather than the fact itself, it cannot be a dispute of fact in this [c]ourt's view.

---

[2] Because this witness has the same last name as defendant, we will refer to her using her first name. We do not intend any disrespect.

A-2602-17T4

The trial on the charges in Indictment 14-03-0457 began on April 12, 2017. The record reflects that "in the middle of jury selection," the prosecutor informed the trial judge that defendant had decided to enter an "open-ended" guilty plea to all the charges in both indictments. The prosecutor explained that because this was an open-plea, "there is no sentence that the [S]tate will recommend." However, at the time of sentencing, the State would petition the court that the sentences imposed on the two separate indictments run consecutively. The prosecutor also stated that if defendant provided a factual basis that exculpate Spagnoli Etienne in the charges reflected in Indictment 14-03-0457, and his sister Nathalie as to Indictment 15-01-0135, the State would move to dismiss the charges against them at the time of sentencing.[3]

The record also includes the following exchange between the trial judge and defendant:

> THE COURT: You know, therefore, the plea agreement here . . . there's really no plea agreement. You're pleading open, open-ended to all of these . . . charges. So, the sentencing decision is left to the sound discretion of the [c]ourt. . . . [T]here are no guarantees, there are no promises . . . from the prosecutor in exchange for your plea. You're pleading open. And there are no other promises in any way, shape or form.

---

[3] The record of the plea hearing the court conducted thereafter shows defendant provided a factual basis as to both indictments sufficient to exculpate Etienne and his sister Nathalie, to the satisfaction of the prosecutor.

You're pleading open to each one of these charges; correct, sir?

DEFENDANT: Yes.

THE COURT: And do you understand that . . . at the time of sentencing, the [c]ourt will read the pre-sentence report, will consider any submissions of the parties, and will determine the appropriate ultimate dispositions of each one of these matters at that time. Do you understand that?

DEFENDANT: Yes.

THE COURT: So, no one has suggested to you . . . any particular outcome. You understand that this will be decided on the day of sentencing; correct?

DEFENDANT: Yes.

Against this record, defendant raises the following arguments in this appeal.

POINT I

THE ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED WITHOUT A WARRANT IN INDICTMENT 15-01-00135-I, ENTERED WITHOUT A HEARING ON THE MERITS OR A STATEMENT OF REASONS IN SUPPORT THEREOF, MUST BE REVERSED BECAUSE A) THE DRIVER'S CONSENT TO SEARCH THE CAR WAS TAINTED BY THE UNLAWFUL STOP AND FRISK THAT PRECEDED IT AND, B) THE OFFICERS DID NOT HAVE REASONABLE SUSPICION TO BELIEVE THAT THERE WERE DRUGS IN THE CAR WHEN THEY

7

ASKED FOR CONSENT TO SEARCH. IN THE ALTERNATIVE, A REMAND IS REQUIRED FOR A HEARING ON THE MERITS.

> a. The Driver's Consent To Search The Car Was Tainted By The Unlawful Stop and Frisk That Preceded it.

> b. The Officers Did Not Have Reasonable Suspicion To Believe That There Were Drugs In The Car When They Asked for Consent to Search, In Violation of State v. Carty.

POINT II

SUPPRESSION OF THE EVIDENCE IN INDICTMENT 14-03-00457-I IS REQUIRED BECAUSE THE STATE FAILED TO PROVE THAT THE PLAIN-VIEW EXCEPTION JUSTIFIED OFFICER SPALLINA'S SEIZURE AND SEARCH OF THE HUGGIES[®] BOX.

POINT III

IN THE ALTERNATIVE, BOTH MATTERS MUST BE REMANDED FOR RESENTENCING BECAUSE THE TRIAL COURT IMPROPERLY DOUBLE-COUNTED DEFENDANT'S PRIOR RECORD.

Rule 3:5-7(c) provides that "[i]f material facts are disputed, testimony thereon shall be taken in open court." The two indictments were assigned to two separate judges. With respect to Indictment 15-01-0135, we agree that the judge erred in denying defendant's motion to suppress without conducting an

8

evidentiary hearing. Defendant had a right to question Anderson under oath in order to challenge the reasonableness of the information he provided to the police.

However, with respect to Indictment 14-03-0457, we are satisfied that the judge assigned to adjudicate defendant's motion to suppress adhered to the requirements of Rule 3:5-7(c). The judge conducted an evidentiary hearing and found the testimony of the State's witness credible. No other witnesses testified. Based on this record, the judge found the arresting officer properly seized the heroin he saw inside a translucent baby wipes box based on the plain view doctrine.

Indictment 15-01-0135

In this case, the judge accepted at face value the unsworn facts provided by the State in its brief opposing defendant's motion to suppress. On October 21, 2014, police officers from the Lake Como and Manasquan Police Departments received information from a confidential informant (CI) that he/she had arranged to buy a quantity of heroin from a man identified only as "D." The police thereafter identified "D" as Darius Anderson. The CI planned to meet Anderson at a Sunrise Food Store, a place they had used for this purpose on a prior occasion. The police officers accompanied the CI to the store where he/she

identified Anderson as the alleged seller. The officers witnessed Anderson leave the store carrying a green backpack and accompanied by another man subsequently identified as Michael Torro.

Manasquan Police Department Patrolman Nicholas Norcia and Detective Phil Bohrman approached the two men and asked them for identification. According to the State, Anderson was initially uncooperative and pulled away from Norcia. While other police officers "assisted" Norcia in detaining Anderson, Norcia noticed an orange capped needle protruding from Anderson's backpack, as the latter attempted to retrieve his identification. When the police searched the backpack, they found approximately two thousand glassine baggies containing heroin.

The officers arrested Anderson for possession of heroin and other related charges. While at the Manasquan Police Station, Anderson waived his Miranda[4] rights and claimed the heroin in the backpack belonged to a man he knew only as "H," subsequently identified as defendant Jean-Baptiste. According to the State, Anderson claimed he owed defendant $9000 and was forced to do whatever defendant told him to do until he paid the debt. Anderson also alleged that defendant asked him to hold the heroin due to something that "went down"

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2602-17T4

a couple of weeks earlier in Asbury Park. Finally, Anderson told the Manasquan police that defendant was a gang member and carried a handgun.

Without hearing this directly from Anderson under oath and subject to cross-examination, the motion judge accepted as competent evidence the following account:

> Anderson was able to confirm this by showing Detective Phil Bohrman of the Lake Como Police Department text messages sent that day between him and the person identified as H scheduling the heroin exchange. Anderson offered to help the police by continuing to communicate with H via text message to arrange the heroin exchange. Anderson told the police that he would be able to identify H on sight. Anderson also stated that H is associated with a teal, light blue sports utility vehicle, SUV, which he either drives or is the passenger.
>
> . . . .
>
> Through a series of text messages, it was arranged that H would meet Anderson in the 400 block of 18th Avenue in Lake Como near two local bars . . . . Anderson identified H's vehicle for Sergeant Kleinknecht pointing to the light colored Toyota SUV that had stopped at the curb just on the south side of 18th Avenue between Briarwood Road and Pine Terrace. The female driver of the Toyota had also turned off its headlights. Sergeant Kleinknecht and Anderson could see that there was a male front seat passenger in the Toyota. Anderson identified him as H.

On January 20, 2017, defendant, his counsel, and an assistant prosecutor from the Monmouth County Prosecutor's Office appeared before the judge assigned to decide defendant's motion to suppress evidence related to Indictment 15-01-0135. The judge characterized the proceeding as "a hearing . . . to determine whether a hearing . . . [for] the taking of testimony is necessary." The prosecutor argued that an evidentiary hearing was not necessary because defense counsel only challenged two issues of fact: (1) the reliability of Darius Anderson; and (2) the consent to search the vehicle where the police found the heroin in this case was not signed by the car's owner.

The prosecutor apprised the judge and defense counsel that the State stipulated that: (1) the consent to search the car was signed by someone other than the owner of the vehicle; and (2) the police officers who arrested defendant relied on information provided by Anderson to identify defendant as being in possession of heroin. The State also did not dispute that Anderson "having been caught with a lot of heroin . . . had the motivation to do whatever he was going to do." Defense counsel argued that he nevertheless wanted to question the informant under oath "to establish that Mr. Anderson is even less reliable than the circumstances and the discovery would suggest."

12

The motion judge denied defendant's application for an evidentiary hearing because

> defendant's counterstatement of fact does not establish a dispute of material fact. The statement about the informant or Darius Anderson being unreliable, without further illustration as to why the information provided in this dispute is unreliable, does not create a dispute that meets the standard of materiality. Merely stating that the informant is unreliable, does not create a factual dispute with regard to the information provided by the informant.

We disagree with the judge's legal conclusion. Under these circumstances, defendant had the right under Rule 3:5-7(c) to question Anderson's veracity as well as the reliability of the information he provided to the police to assuage the penal consequences of his own criminal activities. State v. Williams, 364 N.J. Super. 23, 32 (App. Div. 2003). Defendant was targeted by the police and subjected to a Terry[5] stop based only on Anderson's allegations, which the State concedes were tainted by his desire to minimize his own criminal activities. In Williams, we noted the inherent deficiencies in a situation similar to the one we confront here:

> No identifying information susceptible to confirmation was supplied by the informant, and no suspicious conduct on the part of [the] defendant or his companion occurred. None of the police officers had prior

---

[5] Terry v. Ohio, 392 U.S. 1, 21-22 (1968).

13                                                    A-2602-17T4

knowledge of [the defendant] or his allegedly illegal doings. Thus the constitutionality of the police's conduct depends solely upon the reliability and sufficiency of the information that the informant provided.

[Williams, 364 N.J. Super. at 31.]

Here, the motion judge likewise relied on unchallenged information provided by Anderson that was not subject to independent confirmation. The police officers at the scene did not see any suspicious activity on the part of defendant or his sister before approaching their car with emergency lights, demanding they step out of the vehicle, subjecting them to a Terry search, and requesting Nathalie's consent to search the car. As in Williams, the constitutionality of the police's conduct under these circumstances depends solely upon the reliability and sufficiency of the information provided by Anderson, which could be evaluated only after assessing the credibility of Anderson's testimony in an evidentiary hearing.

Indictment No. 14-03-0457

The judge assigned to adjudicate defendant's motion to suppress the evidence seized in this case conducted an evidentiary hearing over a two-day period. Asbury Park Detective Joseph Spallina testified that on June 29, 2013, he was assigned to "The Street Crimes Unit," which he described as "a proactive

14

unit" assigned to patrol areas of the City known to be centers for the distribution of illegal narcotics. The officers assigned to this unit work in plain clothes and travel in unmarked police vehicles. However, they also wear easily recognizable insignia that identifies them as police officers.

At approximately 7:00 p.m. that day, Spallina was in the front passenger seat of a patrolling vehicle when he saw a parked brown or maroon Hyundai and recognized defendant as the person standing at the vehicle's driver-side window. He testified that he identified defendant as Gregory Jean-Baptiste based upon his "numerous dealings" with him throughout the course of his nine-year career with the Asbury Park Police Department. Spallina knew that defendant had two outstanding arrest warrants for failure to pay child support.[6]

Spallina decided to execute the warrants and arrest defendant. He asked the driver of the police car to pull up to and park next to the Hyundai. When Spallina was approximately a block away from defendant, he saw that defendant's hands were resting on the Hyundai's doorsill. When the police car stopped adjacent to the Hyundai, Spallina testified that defendant

> observed me. He looked back at a couple of . . . guys
> that were sitting on a porch on the west side of the
> street, put something inside the car, which again I

---

[6] The State marked for identification the two arrest warrants issued against defendant by the Family Part for failure to pay child support.

A-2602-17T4

> couldn't see what it was at that point, and then turned around and basically, you know, put his back or his backside on the driver's door.

Spallina stepped out of the police vehicle and advised defendant that he was under arrest for his outstanding child support warrants. After he handcuffed defendant, Spallina recognized the man who was seated behind the steering wheel of the Hyundai as Spagnoli Etienne. As a precautionary measure, Spallina asked Etienne to place his hands where he could see them. At this point, Spallina purposely looked into the interior of the Hyundai. Earlier, he noticed defendant quickly moved his hands in and out of the car. He explained: "I wasn't sure what he had placed under there, maybe a weapon, maybe some other type of inanimate object or some type of contraband." However, the object was simply a Huggies® brand baby wipes container turned over on its side and resting on Etienne's lap.

Spallina asked Etienne to step out of the car. After Etienne complied, he was able to see through the bottom of the Huggies® box, which was missing sticker, caused one area of the container to be particularly translucent. Spallina could see different colors inside the container, including red and blue, which were not the color of baby wipes. Spallina recognized the colors and shapes as the packages used by drug dealers to sell heroin. Spallina explained: "I

A-2602-17T4

recognized them to be bundles of heroin, bags of heroin that are bundled up with little rubber bands." At this point, he concluded he had probable cause to arrest Etienne for possession of heroin. Spallina testified that as Etienne stepped out of the Hyundai in response to his command, defendant spontaneously said: "Why are you locking him up? That shit's mine."

According to Spallina, once Etienne was outside the car he said: "You can search my car, whatever you do, there—there's nothing in there." Spallina testified that before acting on Etienne's invitation, he read Etienne his <u>Miranda</u> rights and asked him to complete and sign a consent form authorizing the police officers to search the Hyundai. Etienne signed the consent to search form and initialed the <u>Miranda</u> rights warning card. A search of the Hyundai did not reveal any additional contraband.

A police transport vehicle took defendant and Etienne to the Asbury Park Police Headquarters. Spallina testified that in the course of the booking process, defendant again spontaneously stated that the heroin inside the baby wipes container belonged to him, not Etienne. He provided the following account of what occurred:

> Q. Okay. And once both gentlemen are arrested and taken to headquarters, do you subsequent[ly] speak with Mr. Jean-Baptiste?

A. Yes.

Q. Okay. And was he advised of his Miranda rights?

A. He was.

Q. Okay. Did he make any statements prior to you bringing him into an interview room at headquarters?

A. He did. During the booking process. And by the booking process, I mean when we arrest someone, we have to take their fingerprints if it's an indictable charge, photograph them for an updated photograph, and we have to do an arrest report. And during this process, I was interrupted multiple times by Mr. Jean-Baptiste stating, you know, the heroin was his and why did we lock up Mr. Etienne, and he wanted to take the weight for it. And each time, I advised him that I . . . couldn't speak to him, I didn't want to speak to him, nor could I without advising him of his Miranda rights, and after two or three times, he allowed me to finish the process.

[(emphasis added).]

Spallina testified he began to interrogate defendant only after defendant read and acknowledged in writing that he understood his Miranda rights and knowingly and voluntarily agreed to waive these rights. In the course of this interrogation, defendant again affirmed that he owned and exclusively possessed the heroin found inside the baby wipes container. During the February 26, 2016 evidentiary hearing, the State played a DVD recording of defendant's custodial interrogation conducted by Spallina.

Our standard of review from an evidentiary hearing ruling upholding the admissibility of evidence seized by the State is well-settled.  As the Supreme Court recently reaffirmed:

> Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.' That is so because an appellate court's review of a cold record is no substitute for the trial court's opportunity to hear and see the witnesses who testified on the stand. We may not overturn the trial court's fact[-]findings unless we conclude that those findings are 'manifestly unsupported' by the 'reasonably credible evidence' in the record.
>
> [Balducci v. Cige, 240 N.J. 574, 594-595 (2020) (internal citations omitted).]

Here, the motion judge made factual findings substantially based on his assessment of the credibility of the only witness who testified at the evidentiary hearing.  The record supports those findings.  We discern no legal basis to disturb the judge's decision to deny defendant's motion to suppress.

Finally, we reject defendant's argument that the motion judge erred when he accepted the seizure and search of the Huggies® box under the plain view doctrine.  At the time Spallina made this observation in 2013, in order to admit contraband evidence seized without a warrant under the plain view doctrine, our Supreme Court required the judge to find the following facts: (1) the law enforcement officer was lawfully in the area where he observed the evidence;

(2) it was immediately apparent that the item observed was evidence of a crime or contraband; and (3) the discovery of the evidence was inadvertent. State v. Bruzzese, 94 N.J. 210, 236-38 (1983).[7]

Here, the judge accepted as credible Spallina's testimony that the bottom of the Huggies® box was "more or less translucent." This enabled Spallina to see what appeared to be, based on his training and experience, folds of the type used to package heroin. Based on the applicable deferential standard of review, we discern no legal basis to disturb the judge's applicability of the plain view doctrine. Cige, 240 N.J. at 594-95.

## Recapitulation

We hold the judge assigned to manage the charges in Indictment No. 15-01-0135 erred in denying defendant's motion to suppress without conducting an evidentiary hearing as required under Rule 3:5-7(c). We thus vacate defendant's guilty plea and the sentence imposed by the court in this case, and remand the matter for the trial court to conduct this evidentiary hearing. With respect to

---

[7] In State v. Gonzales, 227 N.J. 77, 81 (2016), our Supreme Court decided to adopt the United States Supreme Court's holding in Horton v. California, 496 U.S. 128, 130 (1990), which rejected the inadvertence prong of the plain-view doctrine. However, the Gonzalez Court made clear that its holding was a new rule of law in our State "and therefore must be applied prospectively." 227 N.J. at 82.

A-2602-17T4

Indictment 14-03-0457, we affirm the judge's order denying defendant's motion to suppress the evidence seized by the police officer under the plain view doctrine. Under these circumstances, defendant's argument regarding the aggregate sentence imposed by the court is moot.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2602-17T4